# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

GLENDA D. SEAY,          )
                                  )
          **Plaintiff,**        )
                                  )      **Civil Action No. 3:09-CV-01044**
         **v.**                )      **Judge Nixon / Knowles**
                                  )
**MICHAEL J. ASTRUE,**     )
**Commissioner of Social Security**  )
                                  )
          **Defendant.**       )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 21. Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed. Docket No. 28.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

# I. INTRODUCTION

Plaintiff filed her applications for DIB and SSI on January 4, 2006,[1] alleging that she had been disabled since September 12, 2002,[2] due to headaches, muscle spasms, and pain in her neck, shoulders, back, hip, and leg. Docket Nos. 14 and 20, Attachment ("TR"), TR 81-85, 86-88, 112-113. Plaintiff's applications were denied both initially (TR 48, 50) and upon reconsideration (TR 52, 53). Plaintiff subsequently requested (TR 76-77) and received (TR 47) a hearing. Plaintiff's hearing was conducted on January 13, 2009, by Administrative Law Judge ("ALJ") John Daughtry. TR 21-46. Plaintiff and vocational expert ("VE"), Jane Brenton, appeared and testified. *Id.*

On February 4, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 6-20. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since September 12, 2003, the alleged onset date of disability (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: myofascial pain syndrome/fibromyalgia, migraines, depression, anxiety (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

---

[1] Plaintiff's "Disability Determination and Transmittal" forms from the Social Security Administration indicate that Plaintiff's "filing date" was November 30, 2005. TR 48, 50, 52, 53. In his decision, the ALJ also notes November 30, 2005 as the date on which Plaintiff protectively filed for DIB and SSI. TR 9.

[2] At her hearing, Plaintiff amended her disability onset date to September 12, 2003. TR 23.

4.　The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.　After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) which includes the ability to occasionally lift 10 pounds; stand and/or walk 2 hours in an 8 hour workday; no limitations on sitting; alternate sitting and standing; no overhead lifting; at least occasionally climb, balance, kneel, crouch, crawl, stoop, push, pull. The claimant can understand and carry out simple instructions; can engage in routine, repetitive 2-3 step tasks; and can maintain concentration in 2 hour segments.

6.　The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.　Born on February 24, 1963, the claimant was 40 years old on September 12, 2003, which is defined as a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8.　The claimant has 1 year of college and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.　Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.　Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.　The claimant has not been under a disability, as defined in

the Social Security Act, from September 12, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 11-19.

On April 3, 2009, Plaintiff timely filed a request for review of the hearing decision. TR 4. On August 28, 2009, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999)

4

(*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been

further quantified as "more than a mere scintilla of evidence, but less than a preponderance."

*Bell v. Commissioner,* 105 F.3d 244, 245 (6ᵗʰ Cir. 1996) (*citing Consolidated Edison Co. v.*

*N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6ᵗʰ Cir. 1984). In fact, even if the evidence could also support a different

conclusion, the decision of the Administrative Law Judge must stand if substantial evidence

supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6ᵗʰ Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the

Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6ᵗʰ Cir. 1985)

(*citing Allen v. Califano,* 613 F.2d 139, 145 (6ᵗʰ Cir. 1980) (*citing Futernick v. Richardson,* 484

F.2d 647 (6ᵗʰ Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence:

(1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of

medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age,

education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6ᵗʰ Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving

his or her "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not

only includes previous work performed by Plaintiff, but also, considering Plaintiff's age,

education, and work experience, any other relevant work that exists in the national economy in

significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175,

---

[3] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary,* 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that: (1) the ALJ lacked jurisdiction to hear and decide her case; (2) "[t]he Residual Functional Capacity determined by the ALJ establishes disability"; (3) the ALJ erred in concluding that Plaintiff "had only mild to moderate limitations based on her GAF scores"; (4) the ALJ did not properly evaluate Plaintiff's credibility; (5) the testimony of the VE conflicted with the Dictionary of Occupational Titles ("DOT"); and (6) the ALJ erred in "failing to consider the functional effects of the Plaintiff's obesity." Docket No. 23. Accordingly,

Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. The ALJ's Jurisdiction

Plaintiff argues that the ALJ lacked jurisdiction to hear and decide her case. Docket No. 23. Specifically, Plaintiff argues that "[t]he record clearly reflects that SSA never made nor served any reconsideration determinations upon the Plaintiff," in violation of the procedure set forth in 20 C.F.R. § 404.900. *Id.*

Defendant responds that the ALJ had jurisdiction to hear Plaintiff's case, because "[t]he record shows that Plaintiff received a reconsideration determination and was aware of the determination." Docket No. 28.

The record in the case at bar actually contains "Disability Determination and Transmittal"

forms with the "recon" boxes marked for both Plaintiff's DIB and SSI claims, demonstrating that the SSA indeed made reconsideration determinations. TR 52, 53. The Remarks section of each of these forms indicates that the Request for Reconsideration was filed on July 10, 2006, and was received on August 16, 2006. *Id.* Plaintiff's claims were reconsidered, and the initial denial of each claim was affirmed on October 6, 2006. *Id.* Each of these forms indicates that the SSA found that Plaintiff was not disabled "through date of current determination." *Id.* Additionally, in a May 30, 2007 letter to Louise Roberts at the SSA, Carl Groves, Plaintiff's representative at that time, stated that Plaintiff had "been denied twice" by the SSA. TR 74.

Moreover, the Regulations state that, "You or another party may request a hearing before an administrative law judge if we have made . . . [a] reconsidered determination." 20 C.F.R. § 404.930(a)(1). The "Disability Determination and Transmittal" forms with the "recon" boxes marked demonstrate that the SSA made reconsidered determinations, and Plaintiff subsequently requested, and received, a hearing. Per the Regulations, Plaintiff could only properly request a hearing after the SSA had made a reconsidered determination. Plaintiff's request and receipt of a hearing further demonstrate that Plaintiff's claims are erroneous. The ALJ had jurisdiction to hear and decide this case; Plaintiff's argument fails.

## 2. Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ should have found Plaintiff to be disabled based on the residual functional capacity ("RFC") he assigned Plaintiff. Docket No. 23. Specifically, Plaintiff argues that the ALJ found that Plaintiff required a sit/stand option, and the jobs the VE identified do not allow for a sit/stand option. *Id.* Plaintiff also argues that "[t]he finding related to lack of ability to concentrate, precludes a full time SGA level employment and this finding in and of

itself renders Plaintiff disabled." *Id.*

Defendant responds that Plaintiff's RFC, as found by the ALJ, does not render her incapable of performing the jobs identified by the VE. Docket No. 28. Specifically, Defendant argues that, "the Sixth Circuit has specifically rejected the notion that 'any claimant who must alternate between sitting and standing [is precluded] from engaging in sedentary work' and is therefore entitled to disability benefits." *Id.* (*quoting Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988)). To Plaintiff's second argument, Defendant responds that Plaintiff's limited ability to concentrate does not render her disabled. Docket No. 28. Specifically, Defendant argues that the ALJ found that Plaintiff's allegations of her inability to concentrate were not entirely credible, and that the VE identified jobs that did not require concentration in excess of two hours. *Id.*

SSR 83-12 states in pertinent part as follows:

> Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.

SSR No. 83-12 (Cum. Ed. 1983).

Relying on SSR 83-12, Plaintiff asserts that a claimant whose RFC allows for unskilled, sedentary work with a sit/stand option must necessarily be found to be disabled. Docket No. 23. Plaintiff's assertion that any claimant whose RFC allows only for unskilled, sedentary work with a sit/stand option must be found to be disabled is incorrect. SSR 83-12 states only that unskilled jobs "ordinarily" do not allow alternating between sitting and standing; it does not assert that all unskilled jobs do not allow alternating between sitting and standing. In fact, the Sixth Circuit has recognized the existence of a significant number of unskilled, sedentary jobs that would allow

alternation between sitting and standing. *Hall v. Bowen*, 837 F.2d 272, 274-275 (6th Cir. 1988).

Additionally, the ALJ properly followed SSR 83-12 in consulting a vocational expert to

determine what jobs, if any, Plaintiff could perform, given her limitations (which included a

sit/stand option). For these reasons, Plaintiff's argument fails.

Plaintiff's argument that "the finding related to lack of ability to concentrate . . . in and of

itself renders the Plaintiff disabled" also fails. Docket No. 23. The ALJ found that Plaintiff was

capable of concentrating for two hours at a time. Plaintiff argues that this finding "precludes a

full time SGA level employment." *Id.* Part-time work, however, can constitute substantial

gainful activity. *See* 20 C.F.R. § 404.1572. Moreover, the ALJ incorporated his finding

regarding Plaintiff's ability to concentrate into his questioning of the VE, and the VE found that a

person with Plaintiff's RFC, including this limitation on concentration, could perform 7,200 jobs

in Tennessee and 1,149,000 jobs nationally.[4] Because part-time work can constitute substantial

gainful activity, and because the VE found a significant number of jobs that Plaintiff would be

able to perform given her ability to concentrate for two hours at a time, the ALJ's "finding

related to lack of ability to concentrate" does not "in and of itself" render Plaintiff disabled.

Plaintiff's argument fails.

### 3. Plaintiff's Mental Limitations

Plaintiff argues that the ALJ erred by "concluding that the plaintiff had only mild to

moderate mental limitations based mainly on her GAF scores." Docket No. 23. Specifically,

Plaintiff contends that, although the ALJ noted that Plaintiff had been assigned GAF scores of 55

(indicating mild to moderate limitations), the ALJ failed to mention that Plaintiff had also been

---

[4] Plaintiff has not challenged the ALJ's finding that these numbers constitute a significant number of jobs for purposes of the Social Security Act and Regulations.

assigned a GAF score of 50 (indicating severe mental limitations) during the same time frame. *Id.* Citing *Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007) and 65 Fed. Reg. 50746-65 (August 21, 2000), Plaintiff also argues that the Commissioner has declined to endorse the use of GAF scores in Social Security programs because they "have no direct correlation to the severity requirements of the mental orders listing," and that, accordingly, the ALJ should have given greater weight to Plaintiff's treatment notes and subjective complaints than to her GAF scores. *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's mental limitations. Docket No. 28. Specifically, Defendant argues that the ALJ reviewed all the evidence of record, including Plaintiff's GAF scores, when determining that Plaintiff had severe impairments of depression and anxiety, resulting in mental limitations that limited her to jobs with simple instructions and routine, repetitive two-to-three step tasks, that did not require her to maintain concentration for more than two hour segments. *Id.* Defendant counters Plaintiff's assertion that GAF scores should not be used to make determinations because they "have no direct correlation to the severity requirements of the mental orders listing," by citing *Howard v. Commissioner*, 276 F.3d 235, 241 (6th Cir. 2002), a Sixth Circuit case indicating that "a GAF score may be of considerable help to the ALJ in formulating the RFC." *Id.*

As has been noted, the ALJ found that Plaintiff had severe depression and severe anxiety. TR 11. The ALJ further found that Plaintiff was limited to understanding and carrying out simple instructions; engaging in routine, repetitive two-to-three step tasks; and maintaining concentration in two hour segments. TR 13. In making these determinations, the ALJ discussed evidence from a number of medical sources. Specifically, the ALJ noted that a mental

12

assessment of Plaintiff by treating physician Dr. Falouji "demonstrated good memory and the ability to follow 3 step commands." TR 15, 296. The ALJ also noted that "[r]ecords from Centerstone Community Mental Health Center . . . showed diagnoses of major depressive disorder, recurrent, moderate; and panic disorder with agoraphobia." TR 15, 395. The ALJ further noted that treatment notes from Centerstone reflected that Plaintiff had reported at an appointment for medication management that she was "doing pretty good." TR 15, 420. The ALJ additionally noted that:

> A CT scan of the brain was normal and headaches were treated effectively with medication. There was good response to medications for depressive symptoms . . . .Claimant was not engaged in any active treatment at the mental health center other than medication management. Claimant performed daily activities independently . . . .She demonstrated good memory and the ability to follow 3 step commands.

TR 16-17, 296, 297, 327, 374.

Finally, the ALJ considered Plaintiff's part-time work activity as a school bus aide, reasoning that "[t]he physical and mental demands involved suggest at least an ability to meet the demands of unskilled and sedentary work activity." TR 17. While the ALJ noted that Plaintiff had "received mental health treatment for anxiety/depression but GAF scores have been consistently at 55," and the ALJ accorded weight to Plaintiff's consistent GAF scores of 55, the ALJ's opinion demonstrates that he considered all the evidence of record in determining Plaintiff's mental limitations. TR 18; *see, e.g.*, TR 395, 409, 417.

The ALJ properly evaluated Plaintiff's mental limitations. Accordingly, Plaintiff's argument fails.

## 4. Plaintiff's Credibility

Plaintiff argues that the ALJ did not properly evaluate her credibility. Docket No. 23. Specifically, Plaintiff argues that "[t]he ALJ's decision discounts the consistent complaints lodged by the plaintiff from and after the motor vehicle crash which rendered her disabled." *Id.*

Defendant responds that the ALJ adequately evaluated Plaintiff's credibility. Docket No. 28. Specifically, Defendant argues that "the ALJ . . . determined that plaintiff's claim of disabling functional limitations during that period was not supported by a consideration of the evidence in its entirety to the extent that plaintiff was alleging an inability to perform even a limited range of work," and that substantial evidence supports this determination. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(3)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary*, 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible as documented by records from treating sources and examining sources . . . and as evidenced by [Plaintiff's] presentation and level of independent functioning." TR 18. In so finding, the ALJ considered, pursuant to 20 C.F.R. §§ 404.1529(c)(3)(iv)-(vi), evidence regarding Plaintiff's medication, treatment, and other measures to relieve pain. Specifically, the ALJ noted that records from Dr. Falouji reflect that Maxalt was effective in relieving Plaintiff's headaches, and that "[n]o side effects of medications were reported." TR 15, 297. The ALJ also noted that

Plaintiff had "good pain control with medications," and that "[n]o surgical intervention had been recommended." TR 16; *see, e.g.*, TR 297, 342. The ALJ further noted that Plaintiff had "good response to medications for depressive symptoms." TR 17, 420. Additionally, none of Plaintiff's treating physicians opined that she could not work or imposed/reported significant limitations that would prevent Plaintiff from maintaining any type of employment, and no surgical intervention had ever been recommended (TR 16). The ALJ also mentioned that "[s]ymptom magnification was noted on several occasions." TR 17.

Pursuant to 20 C.F.R. § 404.1529(c)(3)(i), the ALJ also considered Plaintiff's daily activities when making his credibility determination. Specifically, the ALJ noted that Plaintiff performed her activities of daily living independently, and had "worked on a regular basis since 2006." TR 17. At her hearing, Plaintiff testified that she was scheduled to work five days a week as a bus aide, but that the number of days she actually worked varied because she "got sick a lot." TR 27. The ALJ further noted that Plaintiff "tried to go to church each Sunday if she did not have a headache," and that she spent time each day reading the Bible. TR 16, 31, 141, 148. The ALJ opined that, "[c]laimant's activities including a part time job suggest that she is capable of doing more than she alleges." TR 18.

The ALJ also considered the objective medical evidence of record in making his credibility determination. The ALJ noted that "[v]irtually all the numerous objective studies have been negative," and that Plaintiff's "GAF scores have been consistently at 55." TR 18. Specifically, the ALJ noted the following:

> Gait was unremarkable. There was good functional range of motion of the neck and full strength in the muscle groups. Straight leg raise test was negative. Pain levels were rated as 4 to 8 or 5 to 10 depending on the level of activity. MRI scan of the left knee in

November 2003 showed small joint space effusion with tilting and lateralization of the patella and no evidence of tear and intact cruciate ligaments. Subsequent MRI scans of the left knee in July 2004 and February 2005 showed small joint space effusion without evidence of fracture and no other abnormalities other than a small Baker's cyst. MRI scan of the lumbar spine in November 2003 was normal with no signs of degenerative change, tear, or disc protrusions. Electrodiagnostic studies performed on the left lower extremity in November 2003 were mildly abnormal suggestive of a low level lumbar radiculopathy most likely involving the L5 nerve root with H reflex studies normal. MRI scan of the left hip in December 2003 showed minimal abnormalities consisting of right trochanteric bursitis and a small amount of joint fluid. A bone scan in July 2004 showed mild uptake in the mid-dorsal spine, both patellae, and the shoulders with no other abnormalities. Electrodiagnostic studies performed on the upper extremities in August 2004 were essentially normal with no evidence conclusive for an underlying cervical radiculopathy, neuropathy of the median or ulnar nerve, or brachial plexopathy. MRI scan of the cervical spine dated March 2005 was normal with no evidence of spurring or herniation. MRI scan of the lumbar spine in June 2005 was unremarkable with no disc desiccation, no stenosis, and no narrowing (Exhibits 1F, 2F, and 3F) [TR 164-165, 166-241, 242-261].

TR 14.

The ALJ also noted that:

CT of the brain in November 2005 was negative. Electrodiagnostic studies of the upper extremities dated October 2004 showed normal upper extremities with no evidence of mononeuropathy at the wrist, ulnar neuropathy, or other mononeuropathies affecting either upper extremity.

TR 15, 296, 327.

The ALJ additionally noted that:

MRI scan of the lumbar spine dated December 20, 2005, was normal with no degeneration, tears, protrusion, herniations, stenosis, or nerve root impingement. MRI scan of the cervical spine in December 2005 was negative with no significant degenerative changes, stenosis, or herniation. MRI scans of the left

17

> hip and left knee in December 2005 were negative with x-rays of
> the left hip and left knee in February 2006 normal.
> Electrodiagnostic studies of the upper extremities in January 2006
> were normal with no evidence of carpal tunnel syndrome. . . .
> (Exhibit 9F) [TR 331-393].

TR 15.

As can be seen, the ALJ's decision specifically addresses in great detail the evidence of record. TR 13-18. The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 C.F.R. § 404.1529(c)(3)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters*, 127 F.3d at 531; and *Kirk v. Secretary*, 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters*, 127 F.3d at 531 (*citing Villarreal v. Secretary*, 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley*, 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)).

If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." TR 18. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 5. Testimony of the Vocational Expert

Plaintiff argues that the testimony of the VE inherently conflicts with the Dictionary of Occupational Titles ("DOT"), because, "the DOT does not provide for, address, or recognize a sit/stand option," and because, "the DOT provides no information regarding a persons' [*sic*] ability to concentrate no more than two hours." Docket No. 23. Plaintiff also argues that the ALJ violated SSR 00-4p by failing to ask the VE, (1) whether any conflict existed between her testimony and the DOT; (2) what a reasonable explanation for any such conflict might be; and (3) how such a conflict would be resolved. *Id.*

Defendant responds that the ALJ acted in accordance with SSR 00-4p in questioning the VE regarding the jobs identified and the DOT. Docket No. 28. Defendant further responds that

the VE's testimony does not conflict with the DOT. *Id.*

Regarding occupational evidence provided by vocational experts, SSR 00-4p states in pertinent part:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR No. 00-4p (Cum. Ed. 2000).

At Plaintiff's hearing, the ALJ instructed the VE as follows:

> In your answers to the hypotheticals, please answer in a manner that is consistent with information contained in the Dictionary of Occupational Titles. If you deviate from that, please indicate when you are doing so.

TR 42.

When answering the ALJ's hypotheticals, the VE did not state that there were any inconsistencies between her testimony and the DOT. TR 42-45. The ALJ had no duty to question the VE further. The Sixth Circuit has held that an ALJ satisfied his obligation under SSR 00-4p by asking the VE whether there was any "'discrepancy between [his] opinions and the DOT standards,'" essentially the same question the ALJ posed to the VE in the instant case. *Lindsley v. Commissioner*, 560 F.3d 601, 605-606 (6th Cir. 2009). Accordingly, Plaintiff's argument fails.

Furthermore, contrary to Plaintiff's assertion, there was no conflict between the VE's

testimony and the DOT. SSR 00-4p states in pertinent part:

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR No. 00-4p (Cum. Ed. 2000).

In response to the ALJ's hypothetical that included the limitations: "would have to alternate sitting and standing" and "can maintain concentration for up to two hour periods," the VE identified three jobs that the hypothetical claimant would be able to perform: general office clerk, DOT 205.367-030; information clerk, DOT 237.367-014; and checker, DOT 237.367-010. TR 43-44. The VE did not indicate that she was deviating from the information contained in the DOT in naming these jobs as appropriate for the ALJ's hypothetical claimant. TR 44. Plaintiff argues that the limitations set forth in the ALJ's hypothetical are inconsistent with the descriptions of these jobs in the DOT, which does not mention a sit/stand option or concentration requirements.[5] The VE did not give information that conflicted with the DOT; rather, she gave more specific information than is contained in the DOT, which only "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p recognizes and allows for the possibility that a VE might provide more specific information than is contained in the DOT. Accordingly, Plaintiff's argument fails.

_____

[5] Plaintiff actually states that "[t]he VE's testimony failed to address the conflict between her testimony and the description of the jobs in the DOT which included a sit/stand option and a severe impairment in the ability to concentrating [sic]." Docket No. 23. It appears, however, that Plaintiff intends to argue that it was the VE's testimony, not the DOT, which included a sit/stand option and a severe impairment in the ability to concentrate.

## 6. Plaintiff's Obesity

Plaintiff argues that "[t]he ALJ did not adequately evaluate the exacerbating effects of Plaintiff's obesity on her other physical conditions." Docket No. 23. Specifically, Plaintiff argues that "the ALJ did not perform a sufficient analysis of Plaintiff's obesity and how it affects her ability to sit, stand, walk, lift, and carry, when determining her RFC." *Id.*

Defendant responds that the ALJ adequately considered Plaintiff's obesity; that "Plaintiff does not identify in her brief any limitations stemming from obesity at all, much less any limitations that the ALJ failed to include in the RFC"; and that "plaintiff's RFC takes into account her obesity." Docket No. 28.

Regarding obesity, the Regulations state in pertinent part:

> [W]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 CFR, Pt. 404, Subpt. P, App. 1(1.00)(Q).

Regarding obesity, SSR 02-1p states in pertinent part as follows:

> [O]besity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. . . . Therefore, we will find that an impairment(s) is "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities. . . .

22

There is no specific level of weight or BMI [Body Mass Index] that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

S.S.R. No. 02-01p (Cum Ed. 2002).

The Regulations require Plaintiff to prove the degree of functional loss resulting from her obesity, as the claimant bears the burden through step four of the five-step sequential evaluation.[6] *Her v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999). In the case at bar, Plaintiff, at her hearing, never alleged any problems caused by her weight. In fact, Plaintiff never mentioned her weight at all, except when specifically questioned about it by the ALJ.[7] Plaintiff also fails to point to any evidence in the record from any physician suggesting an aggravation of her symptoms as a result of her weight, or that her weight has any limiting effect on her physical capabilities whatsoever.

Additionally, the ALJ's opinion reflects that he considered Plaintiff's obesity in reaching his disability determination. Specifically, the ALJ considered medical records from treating physician Dr. Le. TR 15. Dr. Le's treatment notes consistently report Plaintiff's height and weight, and most of the notes state that Plaintiff was "obese." *See, e.g.*, TR 363, 370, 372, 374. Many of Dr. Le's notes report changes in Plaintiff's weight since Plaintiff's last appointment

---

[6] The determination of a claimant's RFC occurs at step four.

[7] At the hearing, the ALJ asked Plaintiff her height and weight, and asked if that was her normal weight since February 2003. TR 25. When Plaintiff responded that she had gained some weight since February 2003, the ALJ asked her how much weight she had gained. *Id.*

with him. *See, e.g.*, TR 361, 362, 365, 369. Despite finding Plaintiff obese, Dr. Le very frequently noted that Plaintiff's only limitation from her pain was that "[Plaintiff] has difficulty walking distances." *See, e.g.*, TR 336, 338, 340, 342.

The ALJ also considered medical records from treating physician Dr. Falouji. TR 15. Like Dr. Le, Dr. Falouji frequently reported Plaintiff's obesity in his treatment notes. *See, e.g.*, TR 298, 304, 307, 313. Despite Plaintiff's obesity, Dr. Falouji noted on multiple occasions that Plaintiff was able to "walk on heels, toes and tandem"; that Plaintiff wore high heeled shoes at her appointments without problem; and that Plaintiff's motor strength was "[i]ntact, 5/5 in the bilateral upper and lower extremities." *See, e.g.*, TR 298, 301, 307.

Finally, the ALJ considered the report of Dr. Johnson, a consultative examiner, who noted that Plaintiff was "overweight," and recorded her height and weight in his notes. TR 17, 263. Despite noting that Plaintiff was "overweight," Dr. Johnson opined that Plaintiff could occasionally lift ten pounds and could stand and walk for two hours in an eight-hour day. TR 265.

The ALJ's opinion demonstrates that he reviewed and considered the medical evidence concerning Plaintiff's obesity when determining Plaintiff's functional limitations, and Plaintiff has failed to demonstrate any effect her obesity has on her abilities. Accordingly, Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge